UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES ROBERT ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:15CV106 RLW |
| | ) |
| CITY OF JACKSON, MISSOURI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 33) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 36). Both motions are fully briefed and ready for disposition.

**I. Background**

This case stems from Plaintiff's arrest after he posted a comment on Facebook in response to a photographic meme on a friend's Facebook page depicting various guns with an explanation of the intended use for each gun under each image.[1] (Pl.'s Statement of Uncontroverted Material Facts ["SUMF"] ¶¶ 6, 8-11, 36, ECF No. 38) The meme was copied or shared from a Facebook page associated with 2nd Amendment rights. (Pl.'s SUMF ¶ 7) Below the image of an assault rifle, Plaintiff commented, "Which one do I need to shoot up a kindergarten?" (Pl.'s SUMF ¶¶ 10-12) Plaintiff meant the comment to be a "satirical question"

---

[1] While the parties have filed cross-motions for summary judgment in this matter, the Court notes that Plaintiff did not include a statement of material facts as to which he contends a genuine issue exists with his memorandum in opposition to Defendants' summary judgment motion. Under this Court's Local Rules, "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4.01(E).

1

to make a point that the post was ridiculous. (Defs.' SUMF ¶¶ 40-42, ECF No. 34) Plaintiff commented on the evening of January 25, 2015, and within hours after Plaintiff posted the comment, the Facebook post and his comment were deleted from Facebook. (Defs.' SUMF ¶ 16, Pl.'s SUMF ¶ 16)

Plaintiff is a supporter of gun control measures as a means to reduce gun violence. (Pl.'s SUMF ¶ 3) He is also politically active and uses Facebook to express his political beliefs and views. (Pl.'s SUMF ¶ 2) He feels satire and humor are powerful ways to express political views, and he is frequently outspoken with friends and co-workers about lax firearm regulations. (Defs.' SUMF ¶¶ 41, 45-49)

On January 26, 2015, the day after Plaintiff posted the comment, the Jackson Police Department became aware of Plaintiff's Facebook comment. (Pl.'s SUMF ¶ 19) Defendant Officer Ryan Medlin ("Medlin") was employed as a law enforcement officer with the Jackson Police Department, located in the Defendant City of Jackson, Missouri ("City of Jackson"). (Pl.'s SUMF ¶ 20) Medlin was not on duty that day, as he was on medical leave due to a work-related injury. (Pl.'s SUMF ¶ 21) However, his wife had received a text message with the Facebook post and Plaintiff's comment, and she showed the image to Medlin. (Pl.'s SUMF ¶¶ 22-24) Medlin then contacted Defendants Officer Anthony Henson ("Henson") and Officer Toby Freeman ("Freeman"), fellow law enforcement officers with the Jackson Police Department. (Pl.'s SUMF ¶ 27) Henson and Freeman were also off-duty that day. (Pl.'s SUMF ¶ 28) The Defendants did not know Plaintiff personally but believed there was a possibility that Plaintiff could shoot up a kindergarten. (Defs.' SUMF ¶¶ 113-117, 119-122, 128-129, 134) Wade Bartels, Ed. D., was an Associate Superintendent of Finance/Business Operation for the

2

Jackson School District and was notified of the Facebook post. (Defs.' SUMF ¶¶ 135-137) He contacted the police and considered the possibility of locking down the district schools with pre-kindergarten and kindergartens the morning after the post because he regarded the comment as a threat. (Defs.' SUMF ¶ 139)

Also on January 26, 2015, Plaintiff went to work at the Casey's General Store in Fruitland, Missouri, a township just outside of the City of Jackson. (Defs.' SUMF ¶¶ 2, 50) While at work, Defendants Henson and Freeman, along with an officer from the Cape Girardeau County Sheriff's Department, showed up at Casey's and proceeded to arrest Plaintiff for making a terroristic threat against a kindergarten. (Defs.' SUMF ¶¶ 51-56; Pl.'s SUMF ¶¶ 34-39) Plaintiff told the officers that "[t]his is not serious. I made a joke." (Defs.' SUMF ¶ 57) Plaintiff was taken to the Jackson Police Department and was interrogated by Defendant Medlin. (Pl.'s SUMF ¶ 39) Defendant Medlin advised Plaintiff of his *Miranda* rights, and Plaintiff provided a written statement, indicating that the question posted on Facebook was satirical and that people interpreted his post as the opposite of the point that he was trying to make, which was that firearm regulations in the United States were lax. (Pl.'s SUMF ¶¶ 40-42; Defs.' SUMF ¶¶ 65-81) After the interview concluded, Plaintiff was taken to a holding cell, where he stayed until the next day when he was transferred to the Cape Girardeau County Jail on a warrant for peace disturbance. (Defs.' SUMF ¶¶ 82, 84-85) Plaintiff was held in the county jail for approximately three days before he posted bond and was released. (Pl.'s SUMF ¶ 56)

Defendant Medlin provided a Probable Cause Affidavit to support the request for an arrest warrant. (Pl.'s SUMF ¶ 47; Defs.' SUMF ¶¶ 110-112) In the statement, Medlin did not identify a particular person as the target of the statement or any particular victim. (Defs.' SUMF

3

¶ 110) The statement quoted Plaintiff's description of why he posted the comment and what the comment meant, including that it was distasteful and intended to be satirical; it was in reference to the Sandy Hook gun massacre; and that Plaintiff is a pacifist who supports gun control and believes gun control will keep people safer. (Defs.' SUMF ¶ 111) On January 27, 2015, Assistant Prosecuting Attorney for Cape Girardeau County prepared an information and warrant, which an associate circuit court judge signed. (Pl.'s SUMF ¶¶ 53-55; Pl.'s Ex. 28, ECF No. 38-28) The State of Missouri charged Plaintiff with the Class B misdemeanor of Peace Disturbance in violation of Mo. Rev. Stat. § 574.010. (Pl.'s SUMF ¶ 57) On February 2, 2015,[2] Plaintiff entered a not guilty plea in Case Number 15CG-CR00237. (Pl.'s SUMF ¶ 58) On April 7, 2015, Assistant Prosecuting Attorney Frank Miller dismissed the case against Plaintiff by *nolle prosequi*. (Pl.'s SUMF ¶ 59)

On June 5, 2015, Plaintiff filed a three-count Complaint in federal court, alleging constitutional violations of his civil rights under 42 U.S.C. § 1983. Specifically, Plaintiff alleges that he was arrested, incarcerated, and criminally prosecuted for engaging in constitutionally protected free speech and was detained and arrested without probable cause in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Compl. ¶ 1, ECF No. 1) Plaintiff also brings a municipal liability claim against Defendant City of Jackson for intentionally violating Plaintiff's constitutional rights. (Compl. ¶¶ 33-40) He seeks injunctive relief, along with nominal, compensatory, and punitive damages. (Compl. ¶ 1)

---

[2] Although Plaintiff's statement of facts states that he pleaded not guilty on January 27, 2017, the exhibit shows that Plaintiff entered a plea of not guilty during his arraignment on February 2, 2015. (Pl.'s Ex. 31, ECF No. 38-31)

Defendants filed a Motion for Summary Judgment on June 27, 2016, arguing that they are entitled to judgment as a matter of law on all three counts because no genuine issue of material fact exists. Defendants also move for summary judgment on the basis of qualified immunity. On that same date, Plaintiff filed a Motion for Partial Summary Judgment, alleging that he is entitled to judgment as a matter of law against the Defendant police officers for detaining, arresting, and imprisoning Plaintiff without probable cause and for intentionally violating his right under the First Amendment to be free from arrest for constitutionally protected acts of expression.[3]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts

---

[3] Plaintiff states in his motion that he seeks summary judgment against Defendants on each count of the Complaint. However, his memorandum addresses only the § 1983 claims against the individual Defendants for violations of his Fourth and First Amendment rights and not against the City of Jackson, Missouri for municipal liability.

5

showing there is a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249; *Celotex,* 477 U.S. at 324. Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. *O'Bryan v. KTIV Television,* 64 F.3d 1188, 1191 (8th Cir. 1995).

### III. Discussion

Both parties have filed motions for summary judgment in this case, claiming that a genuine issue of material fact does not exist and that each is entitled to judgment as a matter of law.

#### A. Count I: Fourth Amendment Violation

Plaintiff's first claim is that the individual Defendants, Officers Medlin, Henson, and Freeman, detained, arrested, and imprisoned Plaintiff without probable cause in violation of the Fourth Amendment. Defendants contend that this claim fails because Plaintiff's arrest was supported by probable cause and thus did not violate Plaintiff's Fourth Amendment rights. Defendants also maintain that they are entitled to qualified immunity.

"Qualified immunity protects governmental officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' *Habiger v. City of Fargo et al.*, 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." *Borgman v. Kedley*, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). The courts have discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008) (Beam, J., dissenting) (citations omitted).

The Fourth Amendment clearly establishes the right of citizens not to be arrested without probable cause. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999). However, "[a] warrantless

arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Borgman*, 646 F.3d at 522-23 (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* at 523 (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Further, arguable probable cause exists when an officer mistakenly makes an arrest under the belief that he or she has probable cause if such mistake is objectively reasonable. *Id.* (citation omitted). "'As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest.'" *Fisher*, 619 F.3d at 816 (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

Here, Defendants Medlin, Henson, and Freeman had at least arguable probable cause to arrest Plaintiff without a warrant and are thus entitled to qualified immunity. The facts demonstrate that below a Facebook post that included pictures of guns, Plaintiff wrote in the comment section, "Which one do I need to shoot up a kindergarten?" The Defendants became aware of the post, and arrested Plaintiff for suspicion of making a terrorist threat under Missouri law. Section 574.115[4] of the Missouri Revised Statutes provides:

> A person commits the crime of making a terrorist threat if such person communicates a threat to cause an incident or condition involving danger to life, communicates a knowingly false report of an incident or condition involving danger to life, or knowingly causes a false belief or fear that an incident has occurred or that a condition exists involving danger to life:

---

[4] The Missouri legislature amended this statute, effective January 1, 2017. The Court sets forth the statute that was in effect at time of Plaintiff's arrest.

8

. . .

> (3) With reckless disregard of the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation . . . .

Mo. Rev. Stat. § 574.115.1(3) (2006). "For purposes of this section, **"threat"** includes an express or implied threat." Mo. Rev. Stat. § 574.115.3 (emphasis in original).

Defendants maintain that, upon viewing the Facebook post, a police officer could reasonably conclude that the communication implied that Plaintiff would shoot up a kindergarten with a firearm, demonstrating reckless disregard concerning the risk of causing the evacuation, quarantine, or closure of any portion of a kindergarten. While Plaintiff contends that his "admittedly distasteful" comment was intended to be satirical, nothing in the post indicated that the comment was a joke. All three officers stated that the comment identified kindergarteners and that the question asking which gun would be best to shoot up a kindergarten was a statement expressing the threat of shooting up a kindergarten. (Defs.' SUMF ¶¶ 113, 119, 121-122, 128-129) Medlin stated that he believed Plaintiff posed a danger to kindergarteners attending a Jackson school. (Defs.' SUMF ¶¶ 113, 116-117) Further, the school superintendent considered locking down the schools with kindergartens after viewing the statement. (Defs.' SUMF ¶¶ 138-39)

Plaintiff relies on *State v. Metzinger* for the proposition that the Facebook post was not a "true threat" and thus Defendants lacked probable cause to detain and arrest Plaintiff. 456 S.W.3d 84 (Mo. Ct. App. 2015) In *Metzinger,* the Missouri Court of Appeals held that a criminal Defendant's four tweets referencing the Boston Marathon bombings during the St. Louis Cardinals – Boston Red Sox World Series did not constitute "true threats" under Mo. Rev.

9

Stat. 574.115. *Id.* at 88, 97-98. Instead, the appellate court found that the tweets were made in the context of a sports rivalry and in the spirit of trash talking, and they did not suggest that the defendant threatened violent acts that were likely to occur. *Id.* at 97-98. The *Metzinger* court concluded "that the trial court properly considered the language of the four tweets and, under the rather unique circumstances of this case, correctly determined, as a matter of law, that the four tweets did not constitute 'true threats' and, therefore, were improperly criminalized."

Here, the Court finds that *Metzinger,* which addressed whether the evidence was sufficient to support the information, is inapposite to the present case. *Metzinger* did not address a constitutional challenge to the defendant's arrest or information based on probable cause. In fact, the case moved forward to the trial stage. Further, the analysis and ultimate determination was narrow and based upon "unique circumstances of [the]case." *Id.* at 98.

Likewise, Plaintiff's reliance on *C.G.M., II v. Juvenile Officer* is misplaced. 258 S.W.3d 879, 883 (Mo. Ct. App. 2008). The Missouri Court of Appeals found that the plaintiff C.G.M.'s comment to a classmate that "he may get dynamite from his dad for his birthday" and question if his friend "wanted to help him blow up the school" was insufficient to constitute a true threat under §574.115.1(4). *Id.* However, the *C.G.M.* court also cautioned:

> [C.G.M.] came very close to crossing the line. We whole heartedly agree with the circuit court that our society has changed and that '[g]one are the days of hanging around airport terminals and joking about bombs.' And 'gone are the days that you think it's funny somebody might have a bomb in their shoe[.]' Commenting to a classmate that he may get dynamite from his father for his birthday and asking the classmate if he wants to help blow up the school is not a matter that the schools, courts, or society should take lightly. However, given the circumstances in this case, we do not believe that the evidence established proof beyond a reasonable doubt that C.G.M. committed the crime of making a terroristic threat[.]

10

*Id.* at 883-84. The *C.G.M.* court assessed the evidence under a proof beyond a reasonable doubt standard, and not the probable cause standard now before this Court. Probable cause was never questioned. Further, like the *Metzinger* court, the *C.G.M.* court specifically stated that its decision was based upon the circumstances of that particular case. *Id.* at 884. Indeed, these cases buttress the Defendant officers' argument that they had probable cause to arrest Plaintiff for posting a Facebook comment about shooting up a kindergarten.

Even if Defendants mistakenly arrested Plaintiff, they are entitled to qualified immunity if they had arguable probable cause to make a warrantless arrest. *Borgman*, 646 F.3d at 522-23. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.* at 523 (citation omitted). The Court holds that in light of the comment and the totality of the circumstances at the time of the arrest, Plaintiff's arrest did not violate his Fourth Amendment rights. The post contained photos of firearms, and under the photo of an assault rifle, Plaintiff asked which one he would need to shoot up a kindergarten, in reference to the Sandy Hook massacre. An officer could reasonably believe at the time of arrest that Plaintiff was threatening to shoot up an area kindergarten. *Fisher*, 619 F.3d at 816 (stating that courts look at the totality of the circumstances based on the information available to the officers at the time of the arrest, and any later developed facts are irrelevant to the analysis of probable cause) (quotations and citations omitted).

Further, the Court finds that the probable cause affidavit did not violate Plaintiff's Fourth Amendment rights. To the extent that Plaintiff is arguing that Medlin's affidavit in support of the request for an arrest warrant that led to Plaintiff's continued incarceration by Cape Girardeau

County without probable cause, the Court finds that Defendants are entitled to qualified immunity on this claim as well. The probable cause statement drafted by Officer Medlin noted the Facebook comment and the photos of firearms, as well as referenced Plaintiff's written statement stating he made a distasteful comment meant to be satirical in reference to the Sandy Hook massacre. Medlin also referenced Plaintiff's written statement that he considered himself a pacifist and supported gun control but that his comment was received with the opposite point he was trying to make. (Pl.'s Ex. 26, ECF No. 38-26)) Medlin then stated that he did not believe Plaintiff would appear in court due to the fact he was a felon on probation and that he believed Plaintiff posed a danger to the crime victims. (*Id.*) Plaintiff asserts that the probable cause statement was defective in that it included Plaintiff's exculpatory explanation of the comment, did not state Medlin did not believe Plaintiff, did not contain any facts that supported a reasonable rejection of the truth of Plaintiff's statement, and contained no facts that identified the required victim or demonstrated the requisite intent to commit the crime. Plaintiff avers that the probable cause statement reflected a reckless disregard for the truth and thus violated the Fourth Amendment.

The Court disagrees with Plaintiff's contention. Nothing in the plain language of the statute requires a specific victim or intent to harm. Section 574.115 of the Missouri Revised Statutes, as was in effect when Plaintiff was arrested, merely required the communication of an implied threat to cause an incident involving danger to life with reckless disregard of the risk of causing the evacuation, quarantine or closure of any portion of a building. Mo. Rev. Stat. §§ 574.115.1 and 574.115.3. Further, whether Medlin did or did not believe Plaintiff is not relevant

to the issue of probable cause.[5] *Bowden v. Meinberg*, 807 F.3d 877, 881-82 (8th Cir. 2015). "Whether probable cause existed, however, is an objective question of law. [Medlin's] subjective belief is irrelevant to whether his affidavit included sufficient facts to establish probable cause." *Id.* at 881. "[Plaintiff's] denial merely created a credibility question; it did not destroy probable cause." *Id.* at 882. Thus, the Court concludes that the individual Defendants are entitled to qualified immunity because no genuine issue of material fact exists from which a reasonable jury could find that the Defendant officers violated the Plaintiff's constitutional rights under the Fourth Amendment.[6] *Moore*, 514 F.3d at 764 (Beam, J., dissenting).

### B. Count II: First Amendment Violation

Next, Plaintiff contends that his arrest violated his right to free speech under the First Amendment to be free from arrest for constitutionally protected acts of expression because the Facebook comment was not a true threat. Defendants, on the other hand, assert that a reasonable law enforcement officer could perceive the comment in the context of the Facebook post as a true threat of violence against kindergarten students, thus entitling Defendant officers to qualified immunity. The Court finds that Defendants Medlin, Henson, and Freeman are entitled to qualified immunity on Plaintiff's First Amendment claim.

As previously set forth, to determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the

---

[5] The Court notes that in *Metzinger*, the State of Missouri went forward on charges of making a terrorist threat for tweets referencing tailgating with a pressure cooker, the Boston bombings, and something going down soon during the Cardinals-Red Sox World Series despite defendant's allegations that the tweets expressed insensitive sarcasm. *Metzinger*, 456 S.W.3d at 88-89.

[6] The Court concludes that the Defendant Officers' arrest of Plaintiff did not violate his constitutional rights and therefore need not reach the issue of whether the right was clearly established at the time of his arrest. *Lykken v. Brady*, 622 F.3d 925, 931 (8th Cir. 2010).

light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." *Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir. 2011). "True threats are not protected under the First Amendment . . . ." *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 764 (8th Cir. 2011). "[A] true threat [is] a 'statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another.'" *Id.* at 762 (quoting *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002)). The speaker must have intended to communicate the statement to the object of the purported threat or to a third party. *Id.* (citation omitted).

The Court finds that, at the time of the arrest, the Defendant officers could have reasonably interpreted Plaintiff's Facebook comment, "which one do I need to shoot up a kindergarten" posted below photos of firearms, as a true threat to kindergarten students. While the post was not communicated to the students, it was posted on Facebook, demonstrating intent to communicate the statement to third parties. The police, assistant prosecuting attorney, circuit judge, and a local school official took the statement seriously, especially in light of recent mass shootings. *See D.J.M.*, 647 F.3d at 764 (finding that the reaction of those who read plaintiff's messages about taking a gun to school and shooting people he hated was evidence that the statements were understood as true threats despite plaintiff's assertion that the messages were intended as a joke).

Further, assuming without finding that the Facebook comment Plaintiff made in the instant case was protected free speech, Plaintiff fails to demonstrate that the right was clearly

14

established at the time of the alleged violation, such that a reasonable official would have known his actions were unlawful. *Keil*, 661 F.3d at 985.

Plaintiff bears the burden of proving that the law was clearly established at the time of the alleged deprivation of a constitutional right, and if the right was not clearly established, the officers are entitled to qualified immunity. *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013) (citations omitted)). While Plaintiff relies upon two Missouri cases to support his contention that the Missouri courts have made clear what constitutes a true threat, the Court notes that both *C.G.M.* and *Metzinger* made clear that the decisions were based on the individual facts of each case and in each individual context. *See Metzinger*, 456 S.W.3d at 98 (concluding that the lower court properly considered the language of the four tweets under unique circumstances of this particular case correctly determined that the tweets did not constitute "true threats"); *C.G.M.*, 258 S.W.3d at 884 (finding that, based on the circumstances of that particular case, the evidence did not establish proof beyond a reasonable doubt that C.G.M. committed the crime of making a terroristic threat).

In light of the absence of clear and controlling authority to the contrary, a law enforcement official could reasonably view the Facebook comment as a true threat, especially in light of the Sandy Hook massacre in 2012. *See, e.g., Mardis v. Hannibal Pub. Sch. Dist.*, 684 F.Supp.2d 1114, 1122 (E.D. Mo. 2010) ("Plaintiff's counsel, however, fails to take into account other relevant cultural events that could influence a reasonable recipient. For example, the Columbine, Jonesboro and Virginia Tech massacres have made students and schools more sensitive to threats of violence."). At the very least, such a First Amendment right to post on Facebook a comment about shooting up a kindergarten under photos of firearms was not clearly

15

established at the time the Defendant officers arrested Plaintiff. Thus, the Court finds that the Defendant officers are entitled to qualified immunity on Plaintiff's First Amendment claim, and therefore summary judgment in favor of the officers is warranted.

## C. Count III: Municipal Liability

Last, Plaintiff claims that the City of Jackson is liable because it developed and maintained policies and customs to show deliberate indifference to constitutional rights and to inadequately supervise and train its police officers. Defendant City of Jackson asserts that the record does not support Plaintiff's claim for municipal liability under § 1983.

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that a government, under color of some official policy, is liable where it "'causes' an employee to violate another's constitutional rights." 436 U.S. 658, 692 (1978). In *Monell* and cases that have followed, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Plaintiff fails to identify any policy or custom of the City of Jackson that caused the alleged constitutional violations. Plaintiff appears to argue, with no support, that the City of Jackson is liable by virtue of the fact that the individual Defendant officers were senior level police officers with discretion to investigate and make arrests. "A policy which does not 'affirmatively sanction' unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) (quoting *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)).

Further, there is no evidence that the City of Jackson failed to train its officers in properly exercising their discretion thus showing deliberate indifference as to the consequences. *Seymour*, 519 F.3d at 800. A "mere allegation of inadequate training will not give rise to a genuine dispute of material fact on the subject." *Id.* at 801. Here, Plaintiff asserts in his Complaint that the City of Jackson inadequately trained its officers regarding the constitutional rights of others with no supporting evidence. Thus, the Court finds that the City of Jackson is entitled to summary judgment. *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007) (finding plaintiffs could not defeat summary judgment where they presented no evidence about defendant's police training and supervision and thus there were no facts to demonstrate a genuine issue for trial).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 36) is **DENIED.** A separate Judgment shall accompany this Memorandum and Order. Dated this 31st day of January, 2017.

*/s/ Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**